2/12/2019 4:20 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 31143240
By: VERONICA GONZALEZ
Filed: 2/11/2019 5:36 PM

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 1 of 38

## CAUSE NO.  2016-87363

| | | |
|---|---|---|
| ST MARON PROPERTIES, LLC, YANG SU D/B/A RE-MART INVESTMENT AND JOHN WINKLER | § § § § | IN THE DISTRICT COURT |
| PLAINTIFFS, | § § § | |
| V. | § § § | OF HARRIS COUNTY, TEXAS |
| CITY OF HOUSTON, TEXAS, AND ELLA PARK TERRACE CIVIC CLUB | § § § § | |
| DEFENDANTS. | § | 151ST JUDICIAL DISTRICT |

## SECOND AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW Jose M. Gallegos, Intervenor, and Plaintiffs, St. Maron Properties, LLC, Yang Su d/b/a RE-Mart Investment and John Winkler, (jointly referred "Landowners") and file this Second Amended Petition complaining of Defendants, City of Houston, Texas (the COH) and the Ella Park Terrace Civic Club (Ella Park) and, in support thereof, show as follows:

### I.   DISCOVERY CONTROL PLAN AND RELIEF SOUGHT

Intervenor intends to conduct discovery under Level 3 in Rule 190.4 of the Texas Rules of Civil Procedure (TRCP).

TRCP 169 does not apply to this suit.

Landowners seek monetary relief over $1,000,000.

# EXHIBIT 1

## II. PARTIES

Intervenor, Jose M. Gallegos, is an individual residing in Harris County, Texas.

Plaintiff, Yang Su d/b/a RE-Mart Investment is an individual and resident of Harris County, Texas doing business as (d/b/a) Re-Mart Investment.

Plaintiff, John Winkler, is an individual residing in Harris County, Texas.

Plaintiff, St. Maron Properties, LLC is a Texas limited liability corporation with its principal place of business in Houston, Harris County, Texas.

Defendant, City of Houston, Texas is a Texas municipal corporation formed by its City Charter pursuant to Article 11, Section 5, of the Texas Constitution with its place of business in Houston, Harris County, Texas, has already appeared and filed an answer in this suit, and is being served with a copy of this Second Amended Petition by electronically serving its attorney of record, Brian A. Amis, Assistant City Attorney, City of Houston Legal Department, P.O. Box 368, Houston, Texas 77001-0368.

Defendant, Ella Park Terrace Civic Club, "Ella Park" is a Texas civic association has been served but has not appeared. Ella Park may be served by certified mail, return receipt requested, and first-class mail by serving its President, Betty McCray, 1410 W. Donovan Street, Houston, TX 77091.

## III. NATURE OF THIS ACTION

Landowners bring statutory and common law claims against the COH and Ella Park for damages caused to the Landowners and their real property located within the COH ("the Property or Properties") as the result of a fraudulently obtained injunction against Intervenor Gallegos and multiple unauthorized entries in 2014 and 2015 during which the COH fell approximately 50,000 square feet of trees, dug a swale and built a berm.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 2 of 38

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 3 of 38

## IV. JURISDICTION AND VENUE

The district courts of Texas have the jurisdiction set forth in Article 5, section 8 of the Texas Constitution and over all civil matters involving an amount in controversy more than $500 exclusive of interest. TEX. GOV. CODE § 24.007. This is a civil matter with an amount in controversy more than $500. Therefore, this Court has jurisdiction to hear and decide this matter.

Jurisdiction is proper because state district courts may exercise jurisdiction over claims brought under 42 U.S.C. § 1983. *Haywood v. Drown,* 556 U.S. 729, 731 (2009).

Venue is proper in this county because this is the county in which the property is located. TEX. CIV. PRAC. & REM. CODE § 15.011. A trial of the right of property must be tried in a court with jurisdiction of the amount in controversy. Tex. Prop. Code § 25.001.

Venue is proper in Harris County because this is the county where the defendants reside. TEX. PROP. CODE § 134.004.

Venue is also proper in this county because this is the county in which all or a substantial portion of the events giving rise to this cause of action occurred. TEX. CIV. PRAC. & REM. CODE § 15.002(a)(1).

## V. FACTS

The following factual allegations are based on information or belief.

The City of Houston ("COH") is a Home Rule municipality. COH Charter, Art. II.

### A. Ella Park Terrace subdivision

The Ella Park Terrace subdivision was developed in the mid to late 1960's. It consists of 128 residences that line the north and south side of W. Donovan Street, Houston, Texas 77091 between Rosslyn Road and Wheatley Street. Therein, 22 residences line the north side of W. Donovan Street between Phillips Road and Bersey Lane ("Ella 22"). *See Ill. 1.*

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 4 of 38



*Illustration 1.* Note that the road crossing Phillips Road and Bersey Lane is W. Donovan Street.

The northern boundary of the Ella 22's backyards meets the southern boundary line of several lots, including the three lots owned by the Plaintiffs and several lots owned by Gallegos. (hereinafter referred to as the Border). *See Ill. 1.*

The Ella Park Terrace Civic Club is an association of residents in the Ella Park Terrace subdivision. ("Ella Park"). Among other pursuits, Ella Park spurred the COH to address watershed migrating across the Border from the Plaintiffs and Gallegos' real property north of the Border into the backyards of the Ella 22. The actions taken by Ella Park and the COH to address the watershed forms the basis of this lawsuit. But first, a bit of history.

*B. The Booker Landfill*

During the late 1960's and early 1970's, Raymond Booker operated an unlicensed solid waste landfill ("Booker Landfill") in Houston, Harris County, Texas.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 5 of 38

The Booker Landfill covered a 25-acre area with, roughly, Rosslyn Road forming the western boundary, Wheatley Street forming the eastern boundary, West Tidwell forming the northern boundary, and the Border forming the southern boundary. As will be shown *infra,* the real property north of the Border later owned by Plaintiffs and Gallegos is located within a portion of what was the Booker Landfill.

On or about 1982, the COH obtained an injunction against Mr. Booker to follow environmental standards set by the State of Texas for proper closure of a solid waste facility. Mr. Booker failed to comply with the injunction and served two days in jail. Thereafter, the property taxes fell into delinquency. Moreover, the COH has admitted that nothing was done to complete a regulatory closure of the Booker Landfill yet claims that the COH followed all environmental standards set by the State of Texas. The COH has admitted that it dumped "dirt" onto the Booker Landfill; however, the COH dumped a lot more than dirt.

*C. The Roadbed Dump.*

In the late 1980's, the COH used a portion of what would become the Landowners' real property some 15 years later as a staging area for roadway demolition, maintenance, and expansion (the "Roadbed Dump"). *See Ill. 2.* Specifically, the COH admits that it dumped materials into the Booker Landfill when working on West Tidwell in 1987. However, the COH operated the Roadbed Dump much longer than one year.

Illustration 2 is an aerial photograph from 1989 that depicts the Roadbed Dump just north of the Border whereon it appears that the COH was continuing to dump roadbed materials. The Ella 22 are shown at the bottom of Illustration. 2. The COH has admitted that the 2004 Health Consultation Report authored by the Texas Department of Health found that the Booker Landfill site had been built up 8 to 10 feet above the surrounding properties. Thus, the COH, over 30 years

ago, dumped enough materials to raise the topography of the real property north of the Border roughly 8 to 10 feet higher than the topography had been prior to the COH's activities.



*Illustration 2.*

And, shortly thereafter, the Ella 22 began to complain about the watershed, i.e., stormwater flowing from the property north of the Border into the Ella 22's backyards.

Over time, the roadbed materials, including clay used in making concrete, solidified and created an impermeable barrier. In the aerial photograph from April of 2014, the Roadbed Dump is still, for the most part, devoid of trees or vegetation in the exact spot the COH operated the Roadbed Dump. *See* Ill. 3.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 6 of 38

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 7 of 38



*Illustration 3*

The COH's modification to the topography of the real property north of the Border by dumping roadbed materials that solidified into an impermeable barrier coupled with the almost simultaneous complaints of flooding from watershed north of the Border by the Ella 22 some 30 years ago leaves little doubt as to who created the nuisance leading to the watershed of the Ella 22's property south of the Border. Despite repeated and ongoing complaints, the COH ignored the Ella 22 and waited for private owners to procure the property north of the Border to blame for the mess that the COH had created.

*D. Ownership of the Properties north of the Border between Phillips Road to Bersey Lane.*

On or about October 21, 2005, Gallegos acquired real property located at 0 Neiman Rd., Houston, Texas 77091 that is more specifically described under HCAD 043-210-000-0185 as TR 26A ABST 544 S MCCLELLAND. TR 26A and is situated immediately north of Philips Rd and just above residences 1 and 2 of the Ella 22 at the east end of the Border as shown in Illustration 1. ("TR 26A"). *See Ill. 1.*

On or about December 1, 2009, Plaintiff, John Winkler, ("Winkler") acquired the real property located immediately east of TR 26A and north of lots 3 and 4 of the Ella 22 more specifically described as 0 Neiman Rd., Houston, TX  77091 under Harris County Appraisal District ("HCAD") number 043-210-000-0350 as TR 53 ABST 544 S MCCLELLAND. ("Winkler Property"). *See Ill. 1.*

On or about October 7, 2014, Plaintiff, St Maron Properties, LLC, ("SMP") acquired real property located immediately north of the Border and lots 5-8 of the Ella 22 and east of the Winkler Property at 0 Neiman Rd., Houston, Texas 77091 that is more specifically described under HCAD number 043-210-000-0315 as TR 40 ABST 544 S MCCLELLAND. ("SMP Property"). *See Ill. 1.*

On or about October 21, 2005, Gallegos acquired real property located immediately north of the Border and lots 8-10 of the Ella 22 and east of the SMP Property at 0 Neiman Rd., Houston, Texas 77091 that is more specifically described under HCAD 043-210-000-0310 as TR 40C ABST 544 S MCCLELLAND ("TR 40C") as shown in Illustration 1 above.  On January 7, 2014, Plaintiff, Yang Su d/b/a RE-Mart Investment acquired TR 40C. ("RE-Mart Property"). *See Ill. 1.*

On or about October 21, 2005, Gallegos acquired real property located immediately north of the Border and lots 10-12 of the Ella 22 and east of the RE-Mart Property at 0 Neiman Rd., Houston, Texas 77091 that is more specifically described under HCAD 043-210-000-0301 as TR

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 8 of 38

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 9 of 38

40A ABST 544 S MCCLELLAND. ("TR 40A"). *See Ill. 1.*

On September 20, 2004, Gallegos acquired real property located north of the Border and lots 12-17 of the Ella 22 and immediately east of TR 40A at 0 Neiman Rd., Houston, TX 77091 that is more specifically described under HCAD 043-210-000-0265 as TR 35 ABST 544 S MCCLELLAND. ("TR 35"). *See Ill. 1.*

On September 20, 2004, Gallegos acquired real property located immediately north of the Border and lots 17-21 of the Ella 22 and east of TR 35 at 0 Neiman Rd., Houston, TX 77091 that is more specifically described under HCAD 043-210-000-0260 as TR 34 ABST 544 S MCCLELLAND. ("TR 34"). *See Ill. 1.*

Tracts 26A, 40A, 34, 35, the Winkler Property, the St. Maron Property, and the RE-Mart Property are collectively referred to herein as the "Property".

On or about September 20, 2004, some 15 years after the COH operated the Roadbed Dump, Gallegos acquired the first two tracts of the Property at issue in the matter *sub judice.*

*E. Wrongful Injunction and Fraud on the Court by the City of Houston.*

After some 30 years of flooding complaints by the Ella 22, the COH decided to address the issue. However, rather than taking responsibility for the mess it created, the COH filed a suit shockingly blaming Gallegos for the flooding.

On December 4, 2011, the COH filed Cause No. 2011-75448; *Ella Park Terrace Civic Club v. Jose M. Gallegos;* in the 55th Judicial District Court of Harris County, Texas. (the "Wrongful Injunction Suit"). Therein, the COH

- accused Gallegos of changing the topography of the property north of the Border,

- claimed that the change in the topography caused water to stream from Gallegos' property north of the Border onto and over the Ella 22's property,

- asserted that Gallegos caused a public nuisance by causing this water shedding issue,

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 10 of 38

- blamed Gallegos for negligently causing the public nuisance,

- alleged Gallegos refused to remedy the public nuisance even though no one ever contacted him about any of the aforementioned issues,

- caused the real property north of the Border to be declared a public nuisance (including real property not owned by Gallegos),

- restrained Gallegos from permitting any water to shed onto the property south of the Border (including property Gallegos did not own north of the Border),

- demanded that Gallegos construct a barrier or to alter the topography of the real property north of the Border (apparently including real property Gallegos did not own) to prevent water shedding onto the Ella 22's property south of the Border),

- permitted, without further notice, the Ella 22 to enter the property north of the Border (including property Gallegos did not own), to construct the barrier should Gallegos not do so,

- forced Gallegos to maintain the barrier (including any barrier constructed by the Ella 22) at Gallegos' expense,

- obtained enforcement by contempt of court should Gallegos fail to comply, and

- never personally served Gallegos with notice of the suit or the permanent injunction ultimately obtained by the Ella 22 and the COH.

Based on the false representations to the court, the trial court granted all of the Ella 22 and COH's requested relief by signing a Permanent Injunction against Gallegos personally.

On or about December 6, 2011, COH Council Member Johnson publicly thanked the City Attorney and Mayor Anise Parker's offices for helping to take aggressive legal action in conjunction with the Ella Park against Mr. Gallegos. The COH later used the unlawfully obtained injunction to enter the Property purportedly to mitigate *the 20 to 30 years* of flooding.

Even after obtaining the injunction, the COH waited to act. On or about February 19, 2013, a resident of the Ella Park subdivision appeared before the COH city council, with various others standing with her in support, and demanded that the COH act on the *30-year* flooding problem

along the Border. Members of the city council explained to the resident that the PWE needed to do an engineering study to see how to resolve the problem and legal needed to determine how to best move forward but that there was a funding issue.

Council Member Burks raised the issue of the Permanent Injunction against Gallegos, but Mayor Pro Tem Gonzalez indicated that more recent information has "complicated things a little" and referred the resident to Gary Norman.

*F. The Ella Park Terrace Flood Control Project.*

In a letter dated September 23, 2015, Dale A. Rudick, P.E. with the COH's Department of Public Works and Engineering ("PWE") states that the COH decided in 2014 to solve the drainage issues related to the Booker Landfill and authorized the PWE to install a berm between Bersey Lane and Philips Road along with new storm water inlets, which the PWE did by trespassing onto and destroying the Landowners' Property. This was referred to as the Ella Park Terrace Flood Control Project ("EPTFCP").

In fact, according to the sworn testimony of Rob Pinheiro, he and Mike Hogan, former Assistant Director of the COH's Department of Public Works and Engineering, entered onto Landowners' Property north of the Border sometime in 2014, without permission, engineering studies, assessments, easements, or condemnation, and decided to install a swale and berm on the Landowners' Properties along the Border (the "Project").

Mr. Rudick further admitted that the heavy rains during Memorial Day weekend in 2015 revealed that the stormwater did not flow as intended and that the COH sent the PWE back onto the Landowners' Properties to readdress the problem, and once again, the COH did not obtain permission, engineering studies, assessments, easements, or condemnation prior thereto.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 11 of 38

Instead, using various motorized vehicles and machinery, the PWE bulldozed and felled thousands of square feet of trees on the Landowners' Property that are, according to fines the COH has assessed against others, worth hundreds of thousands of dollars in order to create a crude roadway across the Property for the heavy motorized vehicles and machinery used by the PWE to dig a swale and install a berm on the Property to prevent watershed from entering into the Ella 22's backyards south of the Border. The removal of the trees and natural barrier caused significant damage to the Property.

In the process, the motorized machinery operated by COH employees or contractors, dug ruts into the Property, and the PWE left the felled trees, debris, and garbage laying all over the Landowners' Property causing additional damage. Prior to the COH mowing the trees down, the trees had formed a natural barrier between the Landowners' Property north of the Border and the 22's real property south of the Border. The Project, installing the makeshift roadway, swale and berm, eradicated the natural barrier, created a nuisance, and completely displaced the Landowners from their possession, use and enjoyment of the Property.

After installation, the Landowners' Property, as damaged, continued to suffer more damage by repeated flooding in and around the swale and berm as it fails to drain properly. Stagnant water routinely appears in and around the ditch and continues to produce routine infestations of mosquitos and snakes that are a health and safety hazard to the public at large. On August 9, 2016, ABC News 13 reported the death of one baby and over two dozen cases of residents that have contracted the Zika virus, a deadly mosquito transmitted virus that causes horrific birth defects. In that same story, Houston Officials were quoted as saying that they will activate the emergency operations center to combat mosquitos infected with Zika.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 12 of 38

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 13 of 38

The COH has not, to the Landowners' knowledge, maintained the drainage system it installed and has abandoned the Project to the Landowners to cure and maintain. The re-grading alone to restore the pre-trespass topography is estimated to be tens of thousands of dollars.

The COH has stonewalled all efforts by the Landowners to obtain answers. The Landowners contacted the PWE, 311 and the city attorney's office, but other than assigning case numbers for each department, the COH has ignored the problem.

As a result, the Landowners were forced to hire counsel who sent the COH demand letters, but the COH refused to do anything. In fact, the COH said go ahead and sue us.

The Landowners have lost a natural barrier that must be reestablished or replaced to cure the damage caused, the value of the trees felled by the COH, the reduction in the fair market value of Property, damage to the remainder, and/or thousands of dollars to cure the damage caused by the Ella Park and the COH Project.

## VI. GOVERNMENTAL LIABILITY

The Landowners incorporate herein by reference as if fully set forth at length the preceding paragraphs.

### A.  PROPRIETARY FUNCTION

The COH was engaged in a Proprietary Function when it entered onto the Landowners' Properties, felled the trees, dug a ditch, and installed a berm in furtherance of the Project. There is no immunity for proprietary functions.

Chapter 101 of the Texas Civil Practice & Remedies Code ("CPRC") is the Texas Tort Claims Act ("TTCA"). TEX. CIV. PRAC. & REM. CODE § 101.002. Excluded from the TTCA are Proprietary Functions because the TTCA is a waiver of immunity for governmental functions.

CPRC § 101.0215. Proprietary Functions do not enjoy immunity, need no waiver of liability,  and subject "municipal corporations to the same duties and liabilities as those incurred by private persons and corporations." *Wasson Interests, Ltd. v. City of Jacksonville*, 559 S.W.3d 142, 146 (Tex. 2018). Proprietary Functions are those performed by a city*, in its discretion*, primarily for the benefit of ***those within the corporate limits*** of the municipality, and not as an arm of the State government. *Id.* at 147; TEX. CIV. PRAC. & REM. CODE § 101.0215(b). These are usually activities that can be, and often are, provided by private persons. *Id.*

The Texas Constitution authorizes the State Legislature to define functions that are governmental and those which are proprietary. TEX. CONST. art. XI, § 13; *Wasson*, 559 S.W.3d at 147. The Legislature has done so through the TTCA, which provides a list of governmental functions and proprietary functions. CPRC § 101.2015. When the function at issue is not specifically listed as either a governmental or proprietary function, courts look to an apply the general definitions provided therein. *Wasson*, 559 S.W.3d at 150.  Governmental functions are those "that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public." *Wasson,* 559 S.W.3d at 147 (citing § 101.0215(a)). Proprietary Functions are discretionary functions a municipality may perform in the interest of the municipality's inhabitants. *Wasson*, 559 S.W.3d at 147 (citing CPRC § 101.0215(b)). Here, the acts of the COH were discretionary, and performed for the interests of a small group of its inhabitants—the residents of Ella Park Terrace.

Neither diversion of watershed or flood control are expressly enumerated governmental functions. Thus, we must look to the general definitions and apply common law precedent.

To further clarify the dichotomy between governmental and proprietary functions, the Texas Supreme Court recently set forth four criteria for making this determination when the acts

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 14 of 38

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 15 of 38

at issue do not fall under one of the enumerated portions of CPRC § 101.0215(a): 1) whether the action was discretionary or mandatory; 2) for the benefit of the general public or the City's residents; 3) for the State's benefit or that of the municipality; and 4) whether there was a sufficient nexus between the action and a governmental function. *Id.* Under this analysis, the COH decision to enter onto the Landowners' Properties in furtherance of and to complete, the Project, served a municipal purpose and thus, were Proprietary Functions—the antithesis of a governmental function.

### a. *Mandatory or Discretionary.*

The COH was under no obligation, statutory or otherwise, to use public resources to abate unsubstantiated complaints regarding watershed. The fact the COH waited over 30 years to act proves that it was not required to act. Furthermore, the COH "enjoined" a Gallegos, private citizen, to remedy the watershed and did so in the name of another private citizen, Ella Park, showing that the COH was not "enjoined" by law or as the state's sovereignty to abate the watershed, and proves the COH's action was a discretionary and proprietary function. *Wasson*, 559 S.W.3d at 147; §101.0215(a). The COH had authority to act because a municipality "may take…property" to carry out a municipal purpose, but the decision to do so was discretionary. TEX. LOC. GOV'T CODE § 51.015(a); *see* TEX. GOV'T CODE § 311.016(1) ("may" creates discretionary authority). The EPTFCP was discretionary. *Wasson*, 559 S.W.3d at 151.

### b. *Public or Resident Benefits*

"Generally, a city's governmental functions benefit the general public and its proprietary functions benefit *its own residents*." *Wasson*, 559 S.W.3d at 151 (emphasis added) (citing TEX. CIV. PRAC. & REM. CODE § 101.0215(a) and TEX. GOV'T CODE § 311.016(1)). Thus, to establish a

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 16 of 38

*governmental function,* the question is not whether the project benefits residents of the city, but whether the project benefits the general public. The COH admits that the purpose of the ditch and berm was to benefit a few residents of Ella Park Terrace, not the COH residents generally and not the general public of the State. The ditch and berm are not part of any state flood control, drainage or abatement programs. There is simply no benefit to the general public or State. The COH exercised its discretion to intervene for the benefit of a small group of residents within the COH corporate limits, not the general public or State as a whole.

The State has no interest in water shedding between private property owners. There was and is no requirement by the State or federal government to abate water shedding from one private property to the next. In fact, water shedding is the responsibility of individual landowners and developers, not the government. Upon development or change in use, the COH ordinances require private landowners and developers to install drainage on their private properties to prevent watershed onto adjacent properties. The COH identifies watershed between adjacent properties as a proprietary function to be performed by individuals, not the government.

Furthermore, the COH proved this a Proprietary Function when it sued Gallegos in the name of Ella Park—a function to be performed and enforced between private parties. The EPTFCP was a discretionary function undertaken for the benefit of a few COH residents in Ella Park Terrace, not a governmental function.

### c. State's or City's Behalf

Sovereign immunity protects political subdivisions of the State, here the COH, only when it acts on the State's behalf. *Tooke v. City of Mexia,* 197 S.W.3d 325, 343 (Tex. 2006); *Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 993 (1949). "When a municipal corporation acts in its private capacity, for the benefit only of those within its corporate limits, and not as an arm

of the [State] government, it is liable for the negligence of its representatives. *Dilley*, 222 S.W.2d at 993 (citations omitted). The COH actions not only primarily benefitted residents of the COH, the EPTFCP benefited exclusively the Ella 22. Whether a project primarily benefits residents of the city or non-residents will often indicate whether it is proprietary or governmental. *Wasson*, 559 S.W.3d at 151.

The COH did not conduct any studies to establish whether there was any "flooding" of Ella Park Terrace, much less the general citizenry of the COH or the State. It did not make any determination that the State's flood control was impacted at all. The only documented flooding that has occurred is on the Landowners' Properties after the COH twice botched its own Project causing flooding on the Landowners' Properties that did not previously occur. Again, the State does not suffer or benefit due to watershed between private property owners. Even if the COH could show some benefit to the State, which it cannot, the EPTFCP primarily benefitted the Ella Park Terrace residents, individually.

Here, the PWE admits that Mayor Annise Parker and several members of city council decided to quiet the complaints of a few residents of Ella Park about flooding that the residents blamed on the Property. There is absolutely no scientifically verifiable evidence that any action should have been taken, much less that the action taken benefited the citizenry beyond the territorial limits of the COH. The COH acted on its own behalf—the City's decision to quiet complaining residents by constructing the EPTFCP was entirely discretionary and for the benefit of the Ella Park residents. *Wasson*, 559 S.W. at 152.

### d. *Relation to a Governmental Function*

Watershed abatement is not a governmental function, and no studies demonstrated that the issue herein described had any impact to the State, thus the action taken by the COH is not related

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 17 of 38

to a governmental function, nor, and in the alternative, is it related closely enough to trigger immunity. Even if it could be argued that preventing the watershed of private property is a governmental function, which it is not, the fact that a city's proprietary action "touches upon" a governmental function is insufficient to render the proprietary action governmental. The TTCA identifies "storm sewers," "waterworks," and "dams and reservoirs," as governmental functions. TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9), (11), (19). However, the COH was not building a storm sewer, establishing a water supply, or even draining city roads for the public's benefit.

In *Wasson*, Supreme Court explained that it is "the nature of the function the municipality was performing when it" constructed the project which governs the proprietary/governmental analysis. In this case, the COH was engaged in a proprietary function when it constructed a ditch and berm across the Property to correct a watershed between neighbors and for the benefit the residents of Ella Park. Governmental immunity never attached.

Floodproofing, flood control, or prevention of water shedding, are not enumerated governmental functions. Consistent with the Supreme Court's recent decision in *Wasson*, this Project was not essential to the City's operation or maintenance of any waterworks, dam, reservoir or storm sewer. *Id.* at 153. The COH engaged in a purely Proprietary Function and, therefore, does not enjoy any sovereign immunity for its wrongful acts, intentional or otherwise.

## B.  APPLICABILITY OF THE TEXAS TORT CLAIMS ACT

In the alternative, and only if the question of whether or not the EPTFCP, a water shed abatement project, taken by the COH is determined not to be a proprietary function, the COH is still liable under the TTCA.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 18 of 38

A. *Violation of CPRC § 101.0215 – Liability of Municipality*

The City of Houston ("COH") is a Home Rule municipality. COH Charter, Art. II.

As a municipality, the COH is liable for damages arising from the municipalities' governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public. TEX. CIV. PRAC. & REM. CODE § 101.0215(a).

The COH defines floodproofing as "any combination of structural and nonstructural additions, changes or adjustments to structures" that "reduce or eliminate flood damage to real estate or improved real property, water and sanitary facilities, structures and their contents." City of Houston, Tex., Code of Ordinances ("COH Code") § 19-2 (2018). Adding a berm and swale to real property to mitigate flooding would constitute floodproofing under this ordinance.

Floodproofing requires a floodproofing certificate issued by "a registered professional engineer licensed in the State of Texas which states that he has developed and/or reviewed the structural design, specifications, and plans for the construction of a structure or improvement covered by the certificate." COH CODE § 19-2 (2018). The design and construction methods must be "in accordance with accepted standards of practice. . . ." COH CODE § 19-2 (2018).

Any *person* violating any provision of Ch. 19 of the COH Code within the corporate limits of the city shall be guilty of a misdemeanor punishable by a fine of not less than $250.00 nor more than $2,000.00. Each day that the violation continues shall constitute a separate offense." COH CODE § 19-92 (emphasis added). Under Chapter 1, section 2 of the Code of Ordinances, "bodies politic" are included in the definition of "person" for the entirety of the Code. COH Code § 1-2(a). Merriam-Webster defines "body politic" as "a group of persons politically organized under a single governmental authority." *Body Politic*, MERRIAM-WEBSTER DICTIONARY, http://www.merriam-

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 19 of 38

webster.com/dictionary/ (last visited January 23, 2019). Thus, the COH is subject to its own ordinances under Chapter 1 of the COH Code. COH Code § 1-2(a).

The COH violated its Floodplain Ordinances. COH Code § 19. The COH did not obtain the appropriate permits. COH CODE § 19-16(a). The City Engineer did not review and approve the permit or approve the EPTFCP because the EPTFCP did not develop or obtain any engineering designs, plans or specifications to be approved or upon which a permit could issue. EPTFCP does not comport with Chapter 19 of the COH Code, and the COH had no right to perform the floodproofing plan without permission from the Landowners. Constructing a swale and berm without a plan or permit is negligence *per se, i.e.,* a violation of a code, regulation or statute. *Osti v. Saylors,* 991 S.W.2d 322, 327 (Tex. App.—Houston [1st Dist] 1999, pet. denied).

"The threshold questions in every negligence per se case are whether the plaintiff belongs to the class that the statute was intended to protect and whether the plaintiff's injury is of a type that the statute was designed to prevent." *Perry v. S.N.,* 973 S.W.2d 301, 305 (Tex. 1998); *Osti* 991 S.W.2d at. 327. The purpose of the COH Code is to ensure that any floodplain project comports "with accepted standards of practice" so that property owners do not suffer the consequences of botched, inoperative projects that cause more harm than good. Such is the damage suffered by Landowners in this case.

Here, the destruction of property, was caused by the negligent use of motorized vehicles. Because the EPTFCP was constructed in violation of the COH Code and constitutes negligence per se, the use of motorized equipment in furtherance of the project was negligence and therefore the TTCA waives immunity for all damages caused by the negligent use of said machinery and equipment.

The Department of Public Works ("PWE") with the COH admitted entering onto the

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 20 of 38

Landowners' Properties in 2014 to install a berm to prevent water from leaving the Landowners' Properties and entering into the properties south of the Border and stormwater inlets at Bersey Lane and Phillips Road to permit the water held back by the berm an avenue of escape. EPTFCP PWE also admits that it had to go back onto the Landowners' Properties in 2015 to redo the work because they failed to complete the EPTFCP properly in 2014. The PWE failed in both attempts as water accumulates on the Landowners' Properties at the berm instead of flowing out through the stormwater inlets at Bersey Lane and Phillips Road.

The COH had no right to construct the berm on the Landowners' Properties because they did not have an easement or permission to do so. In addition to violating COH ordinances in the process, the COH failed to obtain approval from the Harris County Flood Control District ("HCFCD"), City Engineer, and the four county commissioners.

This activity resulted in damage to the Landowners' Properties for which the TTCA waives immunity and the COH may be held liable.

### B. Violation of CPRC § 101.021 – Governmental Liability

A governmental unit in Texas is liable for damages to real property caused by the wrongful act or omission **or** the negligence of an employee acting within his scope of employment while operating motor-driven equipment if the employee would be personally liable under Texas law. TEX. CIV. PRAC. & REM. CODE § 101.021. The operation or use of a motor vehicle "does not cause it if it does no more than furnish the condition that makes the injury possible." *Ector Cty. v. Breedlove*, 168 S.W.3d 864, 867 (Tex. App. 2004)(citing *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex.1998)). The vehicle's use must actually cause the injury. *Bossley*, 968 S.W.2d at 342.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 21 of 38

The COH operated motorized vehicles to fell trees polka-dotting over 50 thousand square feet which formed a natural barrier, prevented erosion, promoted the absorption of rainwaters, and dispersed water on the Property. The fact that these trees were removed, with motorized equipment, to install a berm and swale does not negate the damage caused by the tree's removal. The digging of the ditch and construction of the berm once the trees were removed aggravated the damages and contributed to the nuisance, but the removal of a natural barrier was not only an injury unto itself, it was a nexus to other damages sustained, and a direct and proximate cause to those damages.

The COH altered the natural drainage on the Property to benefit the residents of Ella Park by damaging the Property of other COH residents. The damages sustained by the Property and the cost to restore the Property are a result of and based on the removal of the trees.  While the tree removal is a specific injury unto itself, the tree removal contributed to the degree of injury caused by the ditch and berm. Therefore, the injury sustained by the COH felling of thousands of square feet of trees did not furnish a condition that made injury possible, it is the injury. The COH could not have constructed the ditch or berm without first damaging the Property with the use of motorized equipment and removing the natural drainage and barrier. Therefore, the negligent use of motorized equipment actually caused the damage to the Landowners' Properties implicating the TTCA waives immunity and the COH may be held liable.

## VII.   CAUSES OF ACTION

### A.  COUNT 1—TRESPASS

Because the COH was performing proprietary functions, there is no immunity for any wrongful act, negligent, intentional or otherwise. Landowners seek damages from the COH and

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 22 of 38

Ella Park for the COH's Trespass onto the Landowners' Properties.

The Supreme Court has consistently defined a trespass as encompassing three elements: (1) entry (2) onto the property of another (3) without the property owner's consent or authorization. *Env. Processing Systems, LC. V FPL Farming Ltd*, 457 S.W.3d 414, 419 (Tex. 2015). In this case, the COH (1) entered upon (2) the Landowners' Property, (3) without the Landowners' consents or authorizations.

The COH has admitted that it unlawfully entered the Property on at least three separate occasions on behalf of and in concert with the Ella Park, fell over 50,000 square feet of trees, dug a ditch, dumped soil, left garbage and changed the topography of the Landowners' Properties to cause flooding and stagnant water in and around the ditch. Such actions were completed without Landowners' knowledge, consent or authorization and against their will. The Ella Park and COH's actions were intentional and voluntary.

Landowners have suffered damages as more fully stated herein due to the trespass and Landowners seek to recover damages therefor.

## B.  COUNT 2—NUISANCE

A cause of action for nuisance may be maintained based on the proprietary nature of the COH's action or pursuant to the TTCA.

The elements for a private nuisance are:

(1) the plaintiff has a private interest in land;

(2) the defendant interfered with or invaded the plaintiff's interest by conduct that was negligent, intentional and unreasonable, or abnormal and out of place in its surroundings;

(3) the defendant's conduct resulted in a condition that substantially interfered with the plaintiff's private use and enjoyment of the land; and

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 23 of 38

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 24 of 38

(4) the nuisance caused injury to the plaintiff.

*City of Tyler v. Likes*, 962 S.W.2d 489, 503-04 (Tex. 1997).

Landowners own the Property.

The COH, without permission or legal right to do so, negligently, intentionally and unreasonably, or abnormally entered onto the Landowners' Properties in concert with the Ella Park and removed 50,000 square feet of trees, dug a ditch, built a berm, left debris and garbage, and changed the topography of the land sufficient to cause flooding and stagnant water in and around the affected area on the Property.

The Ella Park and COH's actions substantially interfered with Landowners' use and enjoyment of the land because the trees removed by the COH formed a natural barrier between the Landowners' Property and the residents south of the Border.

As a result, Landowners' Property have suffered physical harm by destruction of the trees, soil, topography, flooding, garbage, and infestations of snakes and mosquitos potentially carrying Zika and/or West Nile viruses.

The physical harm caused a loss in market value of the Landowners' Properties, costs to cure and/or, a loss in the Landowners' use and enjoyment of the land.

## C. COUNT 3—NEGLIGENCE

A cause of action for negligence may be maintained based on the proprietary nature of the COH's action or pursuant to the TTCA.

In Texas, the cause of action for negligence has three elements: one, a legal duty owed by one person to another; two, a breach of that duty; and three, damages proximately caused by the breach. D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002). The COH acting in concert

with the Ella Park negligently destroyed the Landowners' Property.

Before entering the Landowners' Property, the COH acting in concert with the Ella Park, had a duty to complete an engineering study to properly design and install the drainage ditch, perform the installation properly, and obtain permits to do so.

The Landowners' Properties at 0 Neiman Road are located in an "area of minimal flood hazard." FEMA Flood Map Service Center, https://msc.fema.gov (last visited January 22, 2019); Neiman Road Flood Plain Map. Ella Park is labeled as "Zone AE," making it a special flood hazard area. Neiman Road Flood Plain Map; FEMA Definition. "Zone AE" areas are subject to a 0.2 percent or higher chance of flooding in any given year. FEMA Definitions.

Floodplain development permits are required, in addition to other necessary permits, for any development activity in a special flood hazard area. COH CODE § 19-16(a). Development in such an area without a permit is unlawful. *Id*. No permits will be approved for properties with existing floodplain violations unless the work permitted will remedy the violation, or the violation has been removed or corrected. COH CODE § 19-16(c).

The city engineer reviews each floodplain development permit application, the plans and documentation submitted under §§ 19-17 (permit application requirements), 19-18 (additional, discretionary requirements), and either approves or denies the issuance of the permit. COH CODE § 19-19(a). Issuance of a permit is contingent upon compliance with the provisions in Chapter 19. *Id*. Section 19-19 lists the reasons a permit may be denied and the factors the city engineer must consider in making that decision. COH CODE § 19-19(b).

None of this happened in the matter at bar.

The COH acting in concert with the Ella Park failed to do so, and as a result, the Landowners have suffered damage to the Landowners' Property in the loss of the affected area,

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 25 of 38

trees, foliage, use and enjoyment. The COH and Ella Park's actions have damaged the Landowners' Property by forming a nuisance of flooding in and around the affected area and standing water infested with snakes and mosquitos.

### D.   COUNT 4—42 U.S.C § 1983 CLAIMS, CONSPIRACY

Landowners incorporate by reference the facts asserted herein and above.

Landowners seek relief for the COH and Ella Park's conspiracy to and deprivation of federal constitutional and statutory rights. 42 U.S.C. § 1983. A Section 1983 action involves two elements. *Flagg Brothers, Inc. v. Lewkowitz*, 436 U.S. 149, 155 (1978). The complainant must show s/he was deprived of a right 'secured by the Constitution and the laws' of the United States'" *Id.* Second, the complainant must show the deprivation occurred while acting under the color of state law. *Id.* at 155-56.

### 1.   *Deprivation of right secured by the Constitution and the laws of the United States.*

The COH and Ella Park conspired to deprive Gallegos of his Due Process and Equal Protection rights under the 14th Amendment and all Landowners of the right to Just Compensation under the 5th Amendment to the United States Constitution.

Procedural due process demands, at a minimum, that governments provide notice reasonably certain to inform those affected and an opportunity to be heard at a hearing. *Propert v. Dist. of Columbia*, 948 F.2d 1327 (D.C. 1991). In the Underlying Suit, Gallegos was neither provided notice of the suit as process was not served on Gallegos personally or in accordance with the order for alternative service. The only person that lived in Gallegos' home other than adults was Gallegos' youngest son that was younger than 16 years of age. Thus, Gallegos was never given notice of the suit or hearing for the default judgment and permanent injunction.

Furthermore, once the permanent injunction issued, Gallegos was not served with the

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 26 of 38

permanent injunction. Yet, the COH and Ella Park used this improperly obtained injunction to seize the Landowners' Properties for their botched water shed project.

The Takings Clause of the 5th Amendment to the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. CONST. amend. V.  To avoid justly compensating Landowners, the COH conspired with Ella Park to file suit in Ella Park's name, a private citizen without eminent domain authority, to procure Landowners' property to abate the water shedding caused by the COH decades earlier.

Equal protection demands that the Landowners be afforded the same constitutional protections as all citizens. Here, the Landowners property rights were subordinated to those of the residents south of the Border so the COH could avoid the cost and expense of properly addressing the water shedding issue.

Ella Park does not have to be an officer of the State to be acting under the color of state law as a co-conspirator in a 42 U.S.C. § 1983; rather, "it is enough that he is a willful participant in joint action with the State or its agents" for the private citizen to be acting under color of state law. *Dennis v. Sparks*, 449 U.S. 24, 27 (1989).  Landowners contend that Ella Park acted under color of law by conspiring with the COH to deprive the Landowners of their federal constitutional and statutory rights and to deprive them of their property rights. Ella Park allowed COH to sue in its name and to make false accusations against Gallegos. This illegal act was the precursor to the other illegal acts committed by the COH in furtherance of the EPTFCP under color of state law.

Municipalities and local governments are persons subject to suit for damages and prospective relief. *Monell v. Dept. of Social Services of New York,* 436 U.S. 658, 701-02 (1978). A county [or municipality] can be held liable for constitutional torts caused either by (1) an ordinance, regulation, policy, or decision promulgated and officially adopted by the county's

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 27 of 38

officers, or (2) its unofficial customs and policies. 42 U.S.C. § 1983; *Harris Cty. v. Nagel*, 349 S.W.3d 769, 786 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (citing *City of St. Louis v. Praprotnik,* 485 U.S. 112, 121, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (plurality op.) *Merritt v. Harris County*, 775 S.W.2d 17, 24 (Tex.App.-Houston [14th Dist.] 1989, writ denied). An official policy is one that has been adopted by the official or officials responsible under state law for making policy in that area of the county's business. *Id.* The United States Supreme Court recognized ratification as a basis for governmental liability. *Id.* "[R]atification ultimately is based on the conduct of the authorized policymaker, who in effect affirms that in performing the challenged conduct, the employee was executing official policy." *Id.*

To hold the COH liable under 42 U.S.C. § 1983, the claimants must demonstrate that, through deliberate conduct, the COH was "the moving force behind the injury alleged." *Board of Commissioners of Bryan Co. v. Brown,* 117 S.Ct. 1382, 1388 (1997). Proof that a municipality's authorized decision-maker, in this case the Mayor and City Council, intentionally deprived the claimants of a federally protected right establishes that the municipality acted culpably. *Id.*

### 2. *The Deprivation Occurred while Acting Under Color of Law*

The COH derives its power from the Texas Constitution. Tex. Const. art. XI, § 5. The COH engaged in floodproofing measures but circumvented the permitting and certification process by filing the Underlying Suit against Gallegos and seizing the Landowners' Properties without their knowledge or consent.

The COH and Ella Park procured an interest in the Landowners' Properties through the commission of a fraud on the court. Texas Civil Practice & Remedies Code § 12.002. To state a claim under Chapter 12 of the Texas Civil Practice & Remedies Code ("CPRC"), the claimant must show that the defendant(s): one, made, presented, or used a document with knowledge that it

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 28 of 38

was fraudulent lien or claim against real or personal property or an interest in real or personal property; two, intended that the document be given legal effect, and three, intended to cause the plaintiff physical injury, financial injury or mental anguish. *Ferguson v. Bank of New York Mellon Corporation*, 802 F.3d 777, 783 (5th Cir. 2015). Ella Park and the COH filed false allegations in pleadings, affidavits and other papers with the court to procure a default permanent injunction against Gallegos that they did not serve him with to seize the Landowners' Properties without justly compensating them.

The COH knew the allegations were false when they filed suit against Gallegos because the city council meeting within weeks of the COH filing suit against Gallegos indicates that the Ella Park residents south of the Border have been suffering flooding for nearly 30 years. The COH admits it used the Property as the Roadbed Dump around 1987, just over 30 years ago, resulting in an elevation change to the Property up to 10 feet higher than the surrounding property, which was documented in 2004. Gallegos did not own any of the Properties prior to September of 2005.

The COH and Ella Park leveraged this, and other, false allegations to obtain a finding in the Permanent Injunction against Gallegos that the property north of the Border is a nuisance that causes a trespass when rainwater migrates from north of the Border to the property south of the Border. The co-conspirators made these allegations to secure the right under color of law for the COH to enter onto the Landowners' Properties and use whatever means necessary to prevent "any" water from migrating from north of the Border to the property south of the Border at the Landowners' expense.

As yet another example, citations shall be personally served on a defendant unless the citation or order of a court otherwise directs. TEX. R. CIV. P. 106. Rule 106 also permits alternative service by court order. TEX. R. CIV. P. 106(b). In the Underlying Suit, the COH and Ella Park

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 29 of 38

obtained an order for alternative service on Gallegos wherein Gallegos could be served "by leaving a true copy of the citation, the attached petition and" the order of substituted service with anyone over 16 years of age at 3304 Mansfield, Houston, Texas 77091. However, the process server notes on the return that he left it with a child over the age of 16. The only child living at the aforementioned address was Gallegos' son that was younger than 16 at time of service. Thus, the COH and Ella Park failed to properly serve Gallegos.

In the Underlying Suit, the COH and Ella Park asserted through a petition, affidavits and deeds that they had a right to enter onto the Landonwers' Properties and change the topography to abate water shed from the Landowners' Properties onto Ella Park residents' real property south of the Border. The COH and Ella Park presented the fraudulent documents to the Court to obtain a Default Judgment against Gallegos and Permanent Injunction transferring some of Gallegos' real property rights to Ella Park and the COH to avoid justly compensating the Landowners. Ella Park and the COH sought the suit, default and permanent injunction to injure the Landowners by not paying the Landowners for the property rights taken through the suit rather than filing a condemnation suit and justly compensating Gallegos.

Injunctions may only issue based on a petition supported by affidavit or verified. *Tex. Dept. of Public Safety v. Morris*, 411 S.W.2d 620, (Tex. Civ. App.-Houston 1967, no writ). In the Underlying Suit, the petition was not supported by affidavit or verification.

A Citation is required to be issued with a writ of junction that "must command the person or persons enjoined to desist and refrain from the commission or continuance of the acts enjoined," and the party enjoined must be served with the injunction. *Tex. Dept. of Public Safety v. Morris*, 411 S.W.2d 620, (Tex. Civ. App.-Houston 1967, no writ). The COH and Ella Park failed to serve Gallegos, or any of the Landowners, with the Permanent Injunction.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 30 of 38

Through this conspiracy and in contravention of 42 U.S.C. § 1983, the COH and Ella Park violated Gallegos' civil rights pursuant to the Civil Rights Act of 1964 because Gallegos is a protected class.

### E.  COUNT 5—FRAUD ON THE COURT

The COH and Ella Park procured an interest in the Landowners' Properties through the commission of a fraud on the court. TEXAS CIVIL PRACTICE & REMEDIES CODE § 12.002. To state a claim under Chapter 12 of the Texas Civil Practice & Remedies Code ("CPRC"), the claimant must show that the defendant(s): one, made, presented, or used a document with knowledge that it was fraudulent lien or claim against real or personal property or an interest in real or personal property; two, intended that the document be given legal effect, and three, intended to cause the plaintiff physical injury, financial injury or mental anguish. *Ferguson v. Bank of New York Mellon Corporation*, 802 F.3d 777, 783 (5th Cir. 2015).

In the alternative, the COH is liable to the Landowners for the unconstitutional taking of their Property without just compensation. Inverse condemnation occurs when property is taken intentionally for public use without process or a proper condemnation proceeding." City of Houston v. Boyle, 148 S.W. 3d 171, 178 (Tex. App.-Houston [1st Dist.] 2004, no pet.; A.C. Aukerman Co. v. State, 902 S.W. 2d 576, 577 (Tex. App.-Houston [1st Dist.] 1995, writ denied.

### VIII—DAMAGES

### A.  ACTUAL DAMAGES

According to the COH's schedule for valuation of trees, the COH removed trees worth, collectively, hundreds of thousands of dollars. On November 17, 2014, the Houston Chronicle reported that the COH settled claims against a private citizen for removing six mature live oak

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 31 of 38

trees on public property. The COH obtained $300,000 and claimed that the trees were worth $400,000. In the matter at bar, the COH removed over 50,000 square feet of trees on the Landowners' Properties.

The Plaintiffs and Intervenor have previously produced an expert report setting forth a detailed statement of $1,000,000 in damages as a result of the Defendants' actions herein. Specifically, the cleanup and re-grading of the soil will require 133,075 SF of dirt for a total with regrading, compacting, engineering and permitting of no less than $133,075. Furthermore, the cost to replace the estimated 333 trees is approximately $2,500/tree for a total of $832,500 in damages.

The Landowners have suffered a diminution in fair market value to each tract of the Property, total loss of the use of the affected area, costs to cure and/or damage to the remainder.

## B.  EXEMPLARY DAMAGES

Under Chapter 41 of the Texas Civil Practice & Remedies Code, a claimant may recover exemplary damages against defendant(s) if the claimant proves by clear and convincing evidence that the harm for which the claimant seeks recovery of exemplary damages results from fraud, malice or gross negligence. TEX. CIV. PRAC. & REM. CODE § 41.003. When a governmental unit is engaged in a proprietary function, that entity may be liable for exemplary damages for "intentional, willful, or grossly negligent conduct which ... can be imputed directly to its governing body. *Durbin v. City of Winnsboro*, 135 S.W.3d 317, 325 (Tex.App.—Texarkana 2004, pet. denied); *Thompson v. City of Corsicana Hous. Auth.*, 57 S.W.3d 547, 559 (Tex.App.-Waco 2001, no pet.).

Exemplary damages are recoverable to penalize defendants for outrageous, malicious, or otherwise morally culpable conduct and to deter such conduct in the future. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 40 (Tex. 1998); TEX. CIV. PRAC. & REM. CODE §

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 32 of 38

41.001(5). A plaintiff may recover exemplary damages against a municipality when the policy making officials of the municipality engaged in intentional, willful, wanton or grossly negligent acts that show maliciousness or evil intent. *City of Gladewater v. Pike*, 727 S.W.2d 514, 519 (Tex. 1987).

In determining the amount of exemplary damages, the trier of fact shall consider evidence, if any, relating to:

(1) the nature of the wrong;
(2) the character of the conduct involved;
(3) the degree of culpability of the wrongdoer;
(4) the situation and sensibilities of the parties concerned;
(5) the extent to which such conduct offends a public sense of justice and propriety; and
(6) the net worth of the defendant.

TEX. CIV. PRAC. & REM. CODE § 41.001.

The character of the conduct involved in the matter at bar is outrageous, and the facts leave little doubt as to the culpability of COH and Ella Park. The COH has openly admitted to entering the property without permission or legal right. The Permanent Injunction giving Ella Park a right of entry is the product of a fraud on the court. To avoid paying the Landowners fair market value for an easement and cost of properly installing a drainage ditch, the COH addressed the complaints by the Ella Park residents by conspiring with the Ella Park to make the current Landowners pay. The extent to which the conduct of the COH and Ella Park offends a public sense of justice and propriety is shocking.

By way of example and not by way of limitation, the COH and Ella Park devised a scheme wherein the city attorney's office filed suit against Gallegos in the name of Ella Park based on false allegations that Gallegos had changed the topography of the property north of the Border to cause flooding of the property south of the Border.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 33 of 38

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 34 of 38

There is little doubt that the co-conspirators knew their allegations were false when they filed suit against Gallegos because the city council meeting within weeks of the COH filing suit against Gallegos indicates that the Ella Park residents south of the Border have been suffering flooding for nearly 30 years, and the COH admits it used the Property as the Roadbed Dump around 1987, just over 30 years ago, resulting in an elevation change to the Property up to 10 feet higher than the surrounding property. Public records easily accessible by the COH and Ella Park show that neither Gallegos nor any of the other Landowners owned any of the Property prior to September of 2005.

The COH and Ella Park leveraged this, and other, false allegations to obtain a finding in the Permanent Injunction against Gallegos that the property north of the Border is a nuisance that causes a trespass when rainwater migrates from north of the Border to the property south of the Border. The co-conspirators made these allegations to secure the right of Ella Park to enter onto the Landowners' Properties and use whatever means necessary to prevent "any" water from migrating from north of the Border to the property south of the Border at the Landowners' expense.

The city attorneys are well aware that Texas Rule of Civil Procedure 13 requires Texas courts to issue sanctions against attorneys and/or their clients for filing groundless pleadings brought in bad faith for the purpose of harassment and/or who make statements in pleadings which they know to be false and groundless. TEX. R. CIV. P. 13.

After securing the sham Permanent Injunction, neither the COH nor the Ella Park served the Landowners with or recorded the Permanent Injunction in the Real Property Records of Harris County. When the Landowners acquired their properties subsequent to the Permanent Injunction, there was no way for Gallegos nor any of the other Landowners to have knowledge of the declaration in a court order that the Property had been declared a nuisance. None of the other

property owners other than Gallegos were named in the Gallegos lawsuit. Armed with this secret Permanent Injunction, the COH and Ella Park hatched and implemented the EPTFCP.

Regarding the degree and sensibilities of the parties involved and conduct offends a public sense of justice and propriety as many of the acts were criminal in nature. Both the COH and Ella Park knew that they did not have a legal right to either require the Landowners to address a public drainage issue that arose decades before the Landowners purchased their Properties or enter the Landowners' Properties to modify the topography. When the Landowners would not give their property to the COH and Ella Park for free, the COH and Ella Park conspired to and did effectuate their common scheme by obtaining a right of entry based on a Wrongful Injunction Suit against Gallegos and, thereafter, squandered public resources to complete the botched EPTFCP.

The actions of the COH and the Ella Park are malicious. The topographical issues arose after closure of the Booker Landfill in the 1980's. After Mr. Booker failed to properly close the landfill, they jailed him. However, the COH did nothing to remedy the situation. In fact, the COH made it worse by operating the Roadbed Dump on the Property and, thereby, increasing the elevation of the Property by 8 to 10 feet. After laying behind the log and dodging the complaints of the Ella Park residents, various departments of the COH conspired internally and with Ella Park to file the knowingly false and meritless Wrongful Injunction Suit as a pretext to entering onto all of the Landowners' Properties to deforest 50 thousand square feet of foliage, including numerous oak trees and causing flooding on the Landowners' Properties.

After the Landowners learned of what the co-conspirators did to the Property, the COH told the Landowners to go ahead and sue. Ella Park refuses to answer for its actions.

Defendants are entitled to exemplary damages for the Ella Park and COH's malicious conduct toward the Landowners.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 35 of 38

## IX. ATTORNEY'S FEES

Pursuant to 42 U.S.C. § 1983, the Landowners are entitled to recover reasonable attorney's fees and costs against the COH and Ella Park Club.

Landowners seek recovery of the costs of this suit and reasonable and necessary attorney's fees that they have and will continue to accrue through resolution of this matter through, if necessary, the supreme court.

## X. JURY DEMAND

Plaintiffs demand a jury trial and tender the appropriate fee with this petition.

## XI. CONDITIONS PRECEDENT

All conditions precedent to Plaintiffs' claims for relief have been performed or have occurred.

## XII. REQUEST FOR DISCLOSURE

Landowners request that the Ella Park and COH answer, without objection, the disclosures required under Texas Rule of Civil Procedure 194 within the timeframe set forth therein.

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 36 of 38

## XIII. PRAYER

For these reasons, Intervenor, Jose M. Gallegos, and Plaintiffs, St Maron Properties, LLC, Yang Su d/b/a RE-Mart Investment and John Winkler, ask that on final trial that they have judgment, joint and severally, against the Defendants, the City of Houston, Texas and Ella Park Terrace Civic Club, for all damages sustained, pre-judgment interest, attorneys' fees, post-judgment interest, costs of suit and all other relief to which Intervenor and Plaintiffs show themselves justly entitled.

Respectfully submitted,

LUCCI SMITH LAW, PLLC

*/s/ Joseph K. Watts*

Jacqueline Lucci Smith
Texas Bar No.: 00786073
Federal Bar No.: 423297
Joseph K. Watts
Texas Bar No.: 24005135
Federal Bar No.: 22812
2550 Gray Falls Drive, Suite 395
Houston, Texas 77077
Telephone: 832-494-1700
Facsimile:  832-494-1426
JLSmith@LucciSmithLaw.com
JWatts@LucciSmithLaw.com
ATTORNEYS FOR PLAINTIFFS
AND INTERVENOR

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 37 of 38

CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certifies that a true and correct copy of the foregoing instrument was served upon the following counsel of record and pro se party this 11th day of February 2019 as indicated below.

Brian A. Amis
Senior Assistant City Attorney                                     *via electronic service*
brian.amis@houstontx.gov
Tiffany S. Bingham
Senior Assistant City Attorney
900 Bagby Street, 4th Floor
Houston, Texas 77002

Betty McCray
Ella Park Terrace Civic Club          *via certified mail, return receipt requested and*
1410 W. Donovan Street                                                       *first class mail*
Houston, TX  77091

By:      /s/ *Joseph K. Watts*          
JOSEPH K. WATTS

For Official Governmental Use Only - Do Not Disseminate to the Public: 83856769 - Page 38 of 38



I, Marilyn Burgess, District Clerk of Harris
County, Texas certify that this is a true and
correct copy of the original record filed and or
recorded in my office, electronically or hard
copy, as it appears on this date.
Witness my official hand and seal of office
this   March 12, 2019

Certified Document Number:        83856769 Total Pages:  38

Marilyn Burgess, DISTRICT CLERK

HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated
documents are valid. If there is a question regarding the validity of this document and or seal
please e-mail support@hcdistrictclerk.com**